# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ALLEN W. BRADBERRY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:08-0350** |
| **v.** | ) | **Judge Wiseman / Knowles** |
| | ) | |
| **MICHAEL ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 17. Defendant has filed a Responsive Motion for Judgment on the Administrative Record and a Supporting Memorandum of Law, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry Nos. 21-22.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed his applications for DIB[1] and SSI[2] on January 25, 2002, alleging that he had been disabled since September 26, 2001, due to Asperger's syndrome, back and knee injuries, an enlarged heart, scarring of the lungs, a hiatal hernia, loss of memory, depression, and post-traumatic stress syndrome. Docket Entry No. 12, Attachment ("TR"), TR 79-81, 95-104, 105-112, 125-131, 415-418. Plaintiff's applications were denied both initially (TR 34-35, 419-420) and upon reconsideration (TR 36-37, 426-427).[3] Plaintiff subsequently requested (TR 57-58) and received (TR 59-65) a hearing. Plaintiff's hearing was conducted on July 21, 2004, by Administrative Law Judge ("ALJ") Peter C. Edison. TR 449-467. Plaintiff and Plaintiff's mother, Lillian Bradberry, testified. *Id.*

On November 22, 2004, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR

---

[1] The Record contains documents with multiple dates as to the submission of Plaintiff's application for DIB benefits. For example, the application for DIB benefits is stamped January 25, 2002, but is signed by Plaintiff on January 20, 2002. TR 79-81. The document for the initial determination as to whether Plaintiff qualified for DIB benefits notes that Plaintiff filed his application on January 25, 2002. TR 34-35. Plaintiff's brief states that Plaintiff filed his claim for benefits on January 11, 2002. Docket Entry No. 18. Defendant's brief states that Plaintiff filed for DIB benefits on January 25, 2002. Docket Entry No. 22. These discrepancies are not, however, material to the issues before the Court.

[2] The Record contains documents with multiple dates as to the submission of Plaintiff's application for SSI benefits. For example, the application for SSI benefits is stamped January 25, 2002, but is signed by Plaintiff on January 20, 2002. TR 415-418. Additionally, the document for the initial determination as to whether Plaintiff qualified for SSI benefits notes that Plaintiff filed his application on January 11, 2002. TR 419. Both Plaintiff's and Defendant's brief state that Plaintiff filed for SSI benefits on January 11, 2002. Docket Entry Nos. 18, 22. These discrepancies are not, however, material to the issues before the Court.

[3] The Record contains duplicate copies of the explanation of the determination to deny Plaintiff's applications upon reconsideration. *See* TR 38, 428.

2

39-46.  Plaintiff timely filed a request for review of the hearing decision.  TR 66-67.  On

February 4, 2005, the Appeals Council remanded the case to the ALJ to further consider the

severity and residual effects of Plaintiff's mental status by obtaining and evaluating updated

medical records from Plaintiff's treating and other medical sources regarding Plaintiff's mental

impairments.  TR 68-71.[4]

On August 31, 2005, ALJ Mack H. Cherry held Plaintiff's second hearing.  TR 468-511.

Plaintiff, Plaintiff's father, Jimmy Bradberry, Medical Expert Dr. Rebecca Sweeney, and

Vocational Expert ("VE") Melissa Neel, appeared and testified.  *Id.*  On November 18, 2005, the

ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the

meaning of the Social Security Act and Regulations.  TR 14-24.  Specifically, the ALJ made the

following findings of fact:

> 1.      The claimant met the insured status requirements of title II
>         of the Social Security Act as of September 26, 2001, and
>         continues to meet them through the date of this decision.
>
> 2.      The claimant has not engaged in any substantial gainful
>         activity since September 26, 2001, the alleged onset date of
>         disability.
>
> 3.      The evidence establishes that the claimant has a severe
>         combination of impairments that includes depression,
>         Asperger's syndrome, degenerative disc disease, and a
>         hiatal hernia, but he does not have an impairment or
>         combination of impairments of the level of severity
>         required by 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.      The evidence establishes that the claimant has not
>         experienced any pain, depression, or other symptomatology

---

[4]The Record contains a duplicate copy (TR 433-436) of the Appeal's Council Order of
Remand, which is dated February 4, 2005, but is not noted as "received" on February 15, 2005,
like the above cited copy (TR 68-71).

3

of a disabling level of severity on an ongoing basis.

5.      The claimant retains the residual functional capacity to perform work at all exertional levels with moderate limitations regarding his ability to perform mental limitations of function such as performing detailed job instructions, using judgment, interacting appropriately with co-workers, supervisors, and the public, coping with ordinary job pressure, and making adaptations.

6.      The claimant cannot perform his vocationally relevant past work.

7.      The claimant is a younger individual.

8.      The claimant completed high school and two years of college education.

9.      The claimant performed some skilled and semiskilled work during his vocationally relevant past, but his job skills would not be transferable to work within his current residual functional capacity.

10.     Section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rule 204.00 of Appendix 2, Subpart P, Regulations No. 4 provide a framework for a finding that the claimant, considering his residual function capacity, age, education, and work experience, is "not disabled." The vocational expert confirmed that there are a significant number of jobs (about 545,000 in the national economy) in existence in the economy, such as packer, machine operator, inspector, production worker, and hand worker, that the claimant could be expected to perform.

11.     The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR 404.1520(g) and 416.920(g).

TR 23.

On January 23, 2006, Plaintiff timely filed a request for review of the hearing decision.

4

TR 12-13.[5] On November 15, 2007, the Appeals Council issued a letter declining to review the case (TR 8-11), thereby rendering the decision of the ALJ the final decision of the Commissioner.[6] This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

---

[5]The request for review of the hearing decision in the record contained two dates, one signed by Plaintiff on January 18, 2006, and the other noting that the Social Security Administration received the form on January 23, 2006. TR 12-13.

[6] The Appeals Council considered additional evidence that it subsequently included as part of the Record. TR 11.

5

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[7] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[7]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff argues that the ALJ erred by, 1) according lesser weight to the opinion of the consultative psychological examiner, Dr. Premeau, than to the opinion of Dr. Sweeney, the non-treating, non-examining medical expert who testified at the hearing; 2) failing to specifically consider and discuss whether Plaintiff met or medically equaled Listing 12.10; 3) failing to find that Plaintiff's impairments or combination of impairments met or medically equaled the listed

8

medical disorders for affective disorders (Listing 12.04) and autistic disorder and other pervasive

developmental disorders (Listing 12.10); and 4) failing to make a specific credibility finding

regarding Plaintiff's testimony at the hearing.  Docket Entry No. 18.  Accordingly, Plaintiff

maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed

with an immediate award of benefits to Plaintiff, or in the alternative, remanded.  *Id.*

> Sentence four of § 405(g) states as follows:

>> The court shall have power to enter, upon the pleadings and
>> transcript of the record, a judgment affirming, modifying, or
>> reversing the decision of the Commissioner of Social Security,
>> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171,

176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to the Medical Opinions

Plaintiff first argues that the ALJ erroneously accorded lesser weight to the opinion of the

consultative psychological examiner, Dr. Premeau, than to the opinion of Dr. Sweeney, the non-

9

treating, non-examining medical expert who testified at the hearing.[8]  Docket Entry No. 18.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that

---

[8] Neither Plaintiff in his brief, nor the ALJ in his decision, specifically referred to Dr. Premeau by name as the consultative psychologist they discussed.  *See* Docket Entry No. 18; TR 14-24.  The Record reflects, however, that Dr. Premeau signed the consultative psychologist evaluation discussed by Plaintiff and the ALJ.  TR 383-396.

opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

As an initial matter, none of the opinions at issue was rendered by a treating physician. Dr. Premeau was a consultative psychologist and Dr. Sweeney was a non-examining medical expert who evaluated the Record and testified at Plaintiff's second hearing with regard to his disability claims.

Plaintiff argues that the opinion of Dr. Premeau should have been accorded greater weight because, 1) her opinion was the consultative examination recommended by the Appeals Council "if the additional evidence did not clearly depict the claimant's limitations," and 2) she was an examining physician. Docket Entry No. 18; TR 70. Plaintiff contends that the ALJ should not have accorded greater weight to the opinion of Dr. Sweeney because Dr. Sweeney did not examine Plaintiff and because she gave conclusory opinions based on a cursory review of the evidence. Docket Entry No. 18. Additionally, Plaintiff argues that the ALJ's finding regarding Plaintiff's inability to perform vocationally relevant past work conflicted with the stated reasons why he accorded Dr. Premeau's opinion lesser weight. *Id*.

Defendant responds that the ALJ properly accorded lesser weight to the opinion of Dr. Premeau because it contained "internal inconsistencies" that decreased its "veracity" and was inconsistent with the Record as a whole. Docket Entry No. 22, p. 8. Defendant responds that the ALJ properly accorded greater weight to the opinion of Dr. Sweeney because it was supported by specific and detailed findings, and was consistent with the Record as a whole. Docket Entry

No. 22. Defendant further responds that the ALJ's finding regarding Plaintiff's inability to perform vocationally relevant past work was reconcilable with the ALJ's reasons for according the opinion of Dr. Premeau lesser weight because the ALJ based his decision on the VE's testimony. *Id.*

As discussed above, Plaintiff argues that the ALJ should have accorded greater weight to the opinion of Dr. Premeau because it was the consultative examination recommended by the Appeals Council on remand "if the additional evidence did not clearly depict the claimant's limitations." Docket Entry No. 18, TR 70. While it is true that Dr. Premeau's opinion was the consultative examination recommended to be obtained by the Appeals Council's Order of Remand, it is also true that Dr. Sweeney's opinion was the medical expert evidence recommended to be obtained by the Appeals Council's Order of Remand. TR 20-21, 70. Accordingly, both opinions were sought at the recommendation of the Appeals Council. The fact that an opinion was obtained in response to an Appeals Council's Order of Remand does not mean that that opinion is automatically to be accorded significant or controlling weight, and Plaintiff fails to cite any Regulation that so suggests. Rather, an ALJ has the duty to review all of the medical and testimonial evidence relevant to a claim. 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). If the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence, disability within the meaning of the Act and Regulations exists. 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2). As will be discussed in greater detail below, the ALJ in the case at bar properly evaluated and detailed the findings of each opinion before determining that Plaintiff was not disabled within the meaning of the Act and Regulations.

12

Plaintiff further argues that the opinion of Dr. Premeau deserved greater weight than the opinion of Dr. Sweeney because Dr. Premeau examined Plaintiff, while Dr. Sweeney did not. Plaintiff is correct in his assertion that generally more weight will be accorded to the opinion of an examining source than to the opinion of a non-examining source. 20 C.F.R. § 416.927(d). *See also* 20 C.F.R. § 404.1527(d). The Regulations clearly state, however, that the ALJ must consider *all* of the evidence of Record, and must consider *all* of the following factors in determining the weight to be accorded to a medical opinion: the examining relationship, the treatment relationship, the supportability of the opinion by objective medical evidence, the consistency of the opinion with the evidence of record, and the specialization of the person rendering the opinion. *Id.* Accordingly, whether the source rendering the opinion is an examining source is simply one factor to be considered; it does not, in-and-of-itself, dictate the weight to be accorded that opinion.

In reviewing the Record in its entirety, the ALJ comprehensively evaluated Dr. Premeau's opinion. TR 20, 383-396. While the ALJ noted Dr. Premeau's findings that Plaintiff had a moderate reduction in daily activity and that Plaintiff "tended not to fit in while employed in jobs" (TR 20, 391-393), the ALJ also found that Dr. Premeau's findings were inconsistent with the Record as a whole. TR 20. For example, the ALJ found that Dr. Premeau's opinion that Plaintiff had moderate difficulty relating appropriately to co-workers initially and marked problems interacting with co-workers on a long term basis conflicted with Plaintiff's employment history demonstrating his ability to work around people for years at a time. TR 20, 391-393, 396. The ALJ noted Dr. Premeau's report that Plaintiff had displayed adequate memory and concentration during the evaluation, and he further noted that the Record contained

13

no evidence to support Dr. Premeau's diagnosis that Plaintiff was psychotic. TR 20, 391-393, 389. After evaluating all of the medical opinions, the ALJ appropriately accorded lesser weight to Dr. Premeau's opinion because her opinion was inconsistent with the other evidence of Record. TR 20; *See also* 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416 927(c)(2). This determination was proper.

Plaintiff also argues that the ALJ should not have accorded greater weight to Dr. Sweeney's opinion because she did not examine Plaintiff and because her findings were conclusory. Docket Entry No. 18. Plaintiff correctly asserts that Dr. Sweeney was not an examining physician, but as has been noted, an ALJ must consider all the evidence of Record, including the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments. 20 C.F.R. §§ 404.1527(c)(2), 416 927(c)(2); *Reynolds v. Secretary*, 707 F.2d 927, 930 (6th Cir. 1983). In evaluating Plaintiff's medical records, Dr. Sweeney found that Plaintiff demonstrated moderate limitations regarding his abilities to maintain concentration, persistence or pace; to perform detailed work; to use judgment on the job; to interact with other people; to respond to job pressure, and to make vocational adaptations. TR 20-21, 407-413. Dr. Sweeney further found that Plaintiff had a moderate impairment in his social function and had a mild reduction in his activities of daily living. TR 20-21, 407. Dr. Sweeney found that Plaintiff had no episodes of deterioration or decompensation of extended duration. *Id.* At the hearing, Dr. Sweeney testified that her primary diagnosis of Plaintiff was that he suffered from depression, but that it was almost in partial remission. TR 397, 400, 502-506. The ALJ accorded Dr. Sweeney's opinion greater weight because Plaintiff's absences from treatment, lack of need for hospitalization for mental health

14

treatment, and vocational, educational, and social history supported Dr. Sweeney's findings that Plaintiff had moderate symptomatology resulting from his impairments.  TR 21.

When there are inconsistent opinions in the record, the final decision regarding the weight to be given the differing opinions lies with the Commissioner.  *See, e.g.,* 20 C.F.R. § 416.927(e)(2).  After evaluating the record as a whole, the ALJ determined that the opinion of Dr. Sweeney was consistent with, and supported by, the Record as a whole.  He therefore accorded it significant weight.  This determination was proper.  Plaintiff's argument fails.

Plaintiff additionally argues that the ALJ's stated reasons for according Dr. Premeau's opinion lesser weight conflicted with the ALJ's finding that Plaintiff could no longer perform his vocationally relevant past work.  Docket Entry No. 18.  Specifically, Plaintiff argues that the ALJ discounted Dr. Premeau's opinion that Plaintiff "would have moderate difficulty relating appropriately to co-workers initially, with marked problems interacting with co-workers on a long-term basis and an inability to make work adjustments" because that "opinion contrast[ed] with [Plaintiff's] work history of being able to be employed around people for years at a time." *Id.*  Plaintiff contends that such reasoning conflicts with the ALJ's ultimate finding that Plaintiff was unable to return to his past relevant work.  *Id.*

The ALJ, in his decision, stated in pertinent part as follows:

> I find that the claimant has not experienced any pain, depression, or other symptomatology of a disabling level of severity on an ongoing basis.  Diagnostic test results have not revealed impairments of a disabling level of severity.  He has not had abnormal physical findings upon examination to support a finding that he experiences pain of a disabling level of severity.  The claimant has not needed back surgery, despite his musculoskeletal complaints.  The types of medications prescribed are not suggestive of pain of a disabling level of severity.  Physicians have indicated that he retains the capacity to work.  He has been absent

15

from mental health treatment at times, missing scheduled appointments, failing to take medication on an ongoing basis, etc.. He has engaged in activities such as housecleaning, mowing the lawn, seeing his girlfriend, doing laundry, making household repairs, shopping, rollerblading, etc.. He has been able to engage in substantial gainful activity despite his history of impairments such as Asperger's syndrome. . . .

Based on the evidence I find that the claimant's combination of impairments is severe . . . significantly limiting his ability to perform work-related activities such as performing detailed job instructions and interacting appropriately with other people. However, he does not have an impairment or combination of impairments of the level of severity required . . . . The overall evidence fails to support a finding that [Plaintiff] has experienced serious mental limitations of function on an ongoing basis, with the evidence indicating that he has mental limitations that are of moderate severity, instead. . . . [I]n assessing the limitations imposed by the claimant's mental impairments, I find that he has a mild reduction in his activities of daily living, a moderate impairment in his social function, a moderate limitation in maintaining concentration, persistence, or pace, and no episodes of decompensation or deterioration of an extended duration.

Considering the combined effects of his impairments, I find that the claimant does not have any significant physical limitations of function and retains the physical capacity to perform work at all exertional levels, but has moderate limitations regarding his ability to perform mental limitations of function such as performing detailed job instructions, using judgment, interacting appropriately with co-workers, supervisors, and the public, coping with ordinary job pressure, and making adaptions as indicated . . .

With such a residual functional capacity, the vocational expert indicated that an individual could perform the claimant's past work doing wheel alignments. However, since the claimant did not earn enough for the job to be substantial gainful activity, it is not vocationally relevant. From the vocational expert's testimony, the claimant would be unable to perform his past relevant jobs with his current limitations of function. Thus, I find that [Plaintiff] cannot perform his past relevant work . . .

TR 21-22.

16

As the ALJ explicitly stated, the VE testified that Plaintiff *would* be able to return to his past work doing wheel alignments. The issue, however, was not Plaintiff's ability to perform wheel alignments, but the fact that Plaintiff had not earned enough money for his work doing wheel alignments for that work to have been considered substantial gainful activity within the meaning of the Act and Regulations.

Additionally, the fact that Plaintiff was ultimately found unable return to his past relevant work does not mean that he could not work in other positions in the regional or national economies. In response to properly framed hypothetical questions posed by the ALJ, the VE testified that there were a significant number of jobs that Plaintiff would be able to perform. TR 506-511.

Moreover, the ALJ did not discount Dr. Premeau's opinion solely because her opinion contradicted Plaintiff's employment history demonstrating his ability to work around people for years at a time. Rather, that contradiction was only one of the ALJ's stated reasons for discounting Dr. Premeau's opinion. The ALJ also discounted Dr. Premeau's opinion because it was inconsistent with Plaintiff's failure to seek ongoing mental health treatment; his lack of need for hospitalization; his absences from treatment; his "adequate memory and concentration"; his vocational, educational, and social history; and the lack of evidence in the Record to support Dr. Premeau's diagnosis of psychosis. TR 20-21.

Contrary to Plaintiff's assertions, the ALJ's determinations are not contradictory. Plaintiff's argument fails.


**2. Listing 12.10**

17

Plaintiff argues that ALJ failed to specifically consider and discuss whether Plaintiff's impairments met or medically equaled Listing 12.10. Docket Entry No. 18. Plaintiff additionally argues that, regardless of the ALJ's failure to specifically consider and discuss whether Plaintiff's impairments met or medically equaled Listing 12.10, his impairments did, in fact, meet or medically equal Listing 12.10. *Id.* Plaintiff argues that he is, accordingly, disabled. *Id.*

With regard to Listing 12.10, "autistic disorders and other pervasive developmental disorders,"[9] the Code of Federal Regulations states:

> *Autistic disorders and other pervasive developmental disorders*: Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often, there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive.
>
> *The required level of severity for these disorders is met when the requirements in both A and B are satisfied.*
>
> A. Medically documented findings of the following:
>          . . .
> 2. For other pervasive developmental disorders, both of the following:
> a. Qualitative deficits in reciprocal social interaction; and
> b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity;
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or

---

[9]Plaintiff states, without citation, that "Asperger's syndrome is considered a pervasive developmental disorder." Docket Entry No. 18, p. 11.

> pace; or
> 4. Repeated episodes of decompensation, each of extended
> duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.10 (emphasis added).

Plaintiff argues that he suffers from Asperger's syndrome at the level of severity required by Listing 12.10 and that the ALJ erred in not reaching this conclusion. Docket Entry No. 18. Specifically, Plaintiff argues that the ALJ found that Plaintiff suffered from Asperger's syndrome, a pervasive developmental disorder, but then failed to discuss the evidence regarding Plaintiff's Asperger's syndrome and explain why he found that Plaintiff's impairments did not meet or equal the disabling level of severity under Listing 12.10. *Id.*

Defendant responds that the ALJ did "everything short of making a specific reference to the Listing" and argues that the lack of a specific reference to Listing 12.10 by name is irrelevant because the ALJ evaluated whether Plaintiff's Asperger's syndrome disabled him. Docket Entry No. 22. Defendant further responds that, after considering the Record in its entirety, the ALJ found that Plaintiff was not disabled, despite his Asperger's syndrome. *Id.* Defendant argues that the ALJ's decision was fully supported by his findings and by the Record as a whole. *Id.* Defendant additionally responds that the ALJ's ruling was proper because the evidence failed to demonstrate that Plaintiff's Asperger's syndrome was disabling. *Id.*

Plaintiff is correct in his assertion that the ALJ did not explicitly reference Listing 12.10 by name in his decision. Docket Entry No. 18, TR 17-23. Plaintiff fails to cite any Sixth Circuit precedent, however, supporting his argument that an ALJ commits reversible error if he fails to explicitly identify the Listing(s) he considered by name. While the ALJ in the case at bar did not specifically identify Listing 12.10 by name, he did specifically mention Plaintiff's

19

Asperger's syndrome, noting that Plaintiff "has been able to engage in substantial gainful activity despite his history of impairments such as Asperger's syndrome." TR 21. The ALJ also explicitly found that Plaintiff's Asperger's syndrome was a severe impairment when considered in combination with his other impairments. TR 23. Ultimately, the ALJ determined that, although Plaintiff's impairments were severe, they were not of the level of severity required to meet or equal a Listing. *Id.*

In making his decision, the ALJ considered the evidence of Record and provided a detailed explanation regarding why he ultimately deemed Plaintiff's impairments insufficiently severe to be disabling. TR 17-23. For example, the ALJ noted that Plaintiff had been diagnosed with Asperger's syndrome when he was "about six years old," but he had completed high school and two years of college and had worked primarily as a university instructor teaching the automotives curriculum and as a medical supplies representative visiting homes. TR 18. The ALJ also noted that, in addition to working and having a family, Plaintiff was a rescue squad member, performed household tasks, went rollerblading and rock climbing, and attended church. *Id.* The ALJ found it significant that Plaintiff had worked for five years immediately preceding his alleged disability onset date delivering and servicing medical supplies and equipment in customers' homes, which required him to interact with people on a daily basis despite his Asperger's syndrome. *Id.*

The ALJ's decision further demonstrates that he considered the evidence in relation to the "A(2)" criteria of Listing 12.10. TR 18-22. For example, the ALJ recognized Plaintiff's reciprocal social interaction by noting Plaintiff's ability to work as a university instructor and medical supplies representative visiting the homes of clients, and by noting that he interacted

20

well with older people and kids.  TR 18, 21.  The ALJ also recognized Plaintiff's ability to engage in verbal and nonverbal communication and in imaginative activity, noting that Plaintiff had graduated from high school and completed two years of college despite suffering from Asperger's syndrome from age six onward.  TR 18.  After evaluating all of the evidence, the ALJ found that Plaintiff failed to establish that his Asperger's syndrome was of a disabling level of severity under Listing 12.10(A)(2).  TR 21-23.

The ALJ also considered the "B" criteria regarding Plaintiff's mental limitations, including his Asperger's syndrome.  TR 22.  As quoted above, the evidence must indicate at least two of the "B" criteria to demonstrate a disabling level of severity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.10.[10]  The ALJ determined that Plaintiff failed to meet any of the criteria.  TR 22.  Rather, the ALJ concurred with Dr. Sweeney and found that Plaintiff demonstrated a mild reduction in his activities of daily living, a moderate impairment in his social function, a moderate limitation in maintaining concentration, persistence, or pace, and no episodes of decompensation or deterioration of an extended duration.  *Id.*  The ALJ therefore concluded that Plaintiff's impairments or combination of impairments failed to meet the requisite level of severity to establish the presence of at least two "B" criteria.

As can be seen, although the ALJ did not explicitly mention Listing 12.10 by name, he discussed the relevant evidence and demonstrated that Plaintiff did not satisfy either the "A" or "B" criteria.  Plaintiff's arguments relating to Listing 12.10 fail.

**3. Listing 12.04**

Plaintiff argues that he suffered from an affective disorder that met or equaled Listing

---

[10]The "B" requirements are the same for Listings 12.10 and 12.04.

12.04, and therefore, that the ALJ erred in ruling that Plaintiff did not have an affective

disorder. Docket Entry No. 18.

 With regard to Listing 12.04, "affective disorders," the Code of Federal Regulations

states in pertinent part as follows:

> *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
>  *The required level of severity for these disorders is met when the requirements in both A and B are satisfied or when the requirements of C are satisfied.*
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking; or
>   . . .
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;
>
> OR

C. Medically documented history of a chronic affective disorder of
at least 2 years' duration that has caused more than a minimal
limitation of ability to do basic work activities, with symptoms or
signs currently attenuated by medication or psychosocial support,
and one of the following:

1. Repeated episodes of decompensation, each of extended
duration; or
2. A residual disease process that has resulted in such marginal
adjustment that even a minimal increase in mental demands or
change in the environment would be predicted to cause the
individual to decompensate; or
3. Current history of 1 or more years' inability to function outside
a highly supportive living arrangement, with an indication of
continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

Plaintiff specifically argues that he satisfied the "A," "B," and "C" criteria of Listing

12.04. Docket Entry No. 18, p. 12, 14-15. Defendant responds that the ALJ's finding that

Plaintiff did not have an impairment or combination of impairments that met or equaled a

Listing was correct because Plaintiff failed to establish that he met the criteria of Listing 12.04

based on the evidence of Record as a whole. Docket Entry No. 22. Defendant further responds

that the ALJ's finding was proper because the evidence failed to support a finding under the

"C" criteria that Plaintiff's disorder lasted for two years because Plaintiff's symptoms were in at

least partial remission. *Id.* Defendant additionally responds that Plaintiff failed to prove that

his symptoms were then-currently attenuated with medication or psychosocial support as

required under the "C" criteria. *Id.*

While it is true that Dr. Sweeney testified that Plaintiff had six of the required "A"

factors, including anhedonia, appetite disturbance with change in weight, sleep disturbance,

decreased energy, difficulty concentrating or thinking, and thoughts of suicide, she found that

Plaintiff did not suffer from the requisite level of severity for those factors to be considered disabling because Plaintiff's depression was "almost in partial remission, but certainly mild at this point," and because he "seems to be free of several of those symptoms" "[w]ithout any medication." TR 400, 503-504. As has been noted, Plaintiff must demonstrate at least four of the symptoms listed under the "A" criteria, as well as at least two of the "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(B). For the reasons discussed above regarding Listing 12.10, Plaintiff cannot demonstrate that he has experienced any of the marked restrictions, difficulties or episodes of decompensation required by the "B" criteria of Listing 12.04. TR 22.

 With regard to Plaintiff's argument that he has satisfied the "C" requirements of Listing 12.04, the Record simply does not demonstrate either that: (1) Plaintiff's disorder has lasted a minimum of two years and caused more than a minimal limitation of ability to do basic work activities; or (2) that he was being treated with medication or psychosocial support. In this regard, the Record shows that Plaintiff had not sought mental health treatment since 2004, had missed scheduled appointments, had failed to take medication on an on-going basis, and had refused follow-up treatment. *See* TR 21, 211, 215-216, 293, 345, 377, 387, 484, 491-492, 503-504. Plaintiff also had no episodes of decompensation of extended duration or otherwise (TR 504), and Plaintiff maintains his own household (TR 21, 91, 107-108, 390-391).

 Because the Record does not demonstrate that Plaintiff met the requisite "A" and "B," or "C" criteria, the ALJ properly decided that Plaintiff's impairment did not meet or medically equal Listing 12.04. Plaintiff's argument fails.

### 4. Assessment of Plaintiff's Credibility

 Plaintiff argues that the ALJ failed to specifically state the weight he gave to Plaintiff's

statements and the reasons why he afforded that weight as required by SSR 96-7p. Docket

Entry No. 18. Specifically, Plaintiff argues that the ALJ committed reversible error because he

simply stated that he used the criteria outlined in SSR 96-7p and made a conclusory statement

regarding his credibility finding of Plaintiff's statements. *Id*. Defendant responds that the ALJ

made specific findings regarding the credibility of Plaintiff's statements and that he noted

inconsistencies between Plaintiff's statements and the objective medical evidence in the case.

Docket Entry No. 22.

With regard to assessing the credibility of an individual's statements, Social Security

Ruling 96-7p states in pertinent part as follows:

> 1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, *unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.*
>
> 2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, *the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.* This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
>
> 3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, *the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements* if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
>
> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own

25

statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. *An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.*

5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.*

. . .

SSR No. 96-7p (1996) (emphasis added).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters v. Comm'r of Soc Sec*, 127 F.3d 525 531 (6th Cir. 1997); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible,

26

however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

While Plaintiff argues that the ALJ conclusorily stated that he considered the testimony and used the criteria outlined in SSR 96-7p, the ALJ simply did not do so. *See* TR 17-23. Rather, the ALJ stated:

> Using the criteria outlined in Social Security Regulations 404.1529 and 416.929 and Social Security Ruling 96-7p, I find that the claimant has not experienced any pain, depression, or other symptomatology of a disabling level of severity on an ongoing basis. Diagnostic test results have not revealed impairments of a disabling level of severity. He has not had abnormal physical findings upon examination to support a finding that he experiences pain of a disabling level of severity. The claimant has not needed back surgery, despite his musculoskeletal complaints. The types of medications prescribed are not suggestive of pain of a disabling level of severity. Physicians have indicated that he retains the capacity to work. He has been absent from mental health treatment at times, missing scheduled appointments, failing to take medication on an ongoing basis, etc.. He has engaged in activities such as housecleaning, mowing the lawn, seeing his girlfriend, doing laundry, making household repairs, shopping, rollerblading, etc.. He has been able to engage in substantial gainful activity despite his history of impairments such as Asperger's syndrome. He has not complained of any significant side-effects to his treating sources, and could have his medications adjusted or changed if he experienced side-effects.

TR 21.

As has been demonstrated, the ALJ specifically articulated his reasons for not finding Plaintiff's claims that he experienced pain, depression, or other symptomatology of a disabling level of severity on an ongoing bases to be credible. *Id.* Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

E. CLIFTON KNOWLES
United States Magistrate Judge

28